**In the Matter of The Arbitration between INTERBRAS CAYMAN CO., Petitioner-Appellee,**

**v.**

**ORIENT VICTORY SHIPPING CO., S.A., Respondent-Appellant.**

**No. 115, Docket 81–7340.**

United States Court of Appeals, Second Circuit.

Argued Oct. 9, 1981.

Decided Nov. 2, 1981.

John D. Kimball, New York City (Healy & Baillie, New York City, of counsel), for respondent-appellant.

Paul S. Aufrichtig, New York City, for petitioner-appellee.

Before FEINBERG, Chief Judge, MESKILL, Circuit Judge, and PALMIERI,* District Judge.

PER CURIAM:

Orient Victory Shipping Co., S.A. appeals from an order of the United States District Court for the Southern District of New York, Whitman Knapp, *J.*, compelling Orient to arbitrate a dispute with appellee Interbras Cayman Co., a Cayman Islands corporation. The district court issued its order on the basis of affidavits and papers without conducting a trial. 509 F.Supp. 1067, 1068 (S.D.N.Y.1981). Because we conclude that a genuine issue of fact exists as to whether Orient is a party to the arbitration agreement, we reverse and remand to the district court for a trial pursuant to 9 U.S.C. § 4 (1976).

## BACKGROUND

On October 12, 1979, Frota Oceanica Brasilera, S.A., a third party, entered into an agreement with Orient to charter the vessel ORIENT VICTORY. The charter agreement contained a standard New York Produce Exchange Arbitration Clause providing that any disputed matter would be referred to a three person panel in New York. Later that day, Frota sub-chartered the

* Honorable Edmund L. Palmieri, United States District Judge for the Southern District of New York, sitting by designation.

vessel to appellee Interbras. Frota and Interbras also executed a supplemental agreement which released Frota from "any responsibility whatsoever" with respect to their sub-charter arrangement. On June 4, 1980, Frota sent a letter to Interbras which stated in pertinent part:

> We, hereby, assign to you all the rights we may have against Orient Victory Shipping Company S/A, including the right to arbitrate on your own name, arising from the above referred Charter Party.

Interbras used the chartered vessel to transport a shipment of pig iron from Brazil to Pakistan. The Pakistani consignees complained that the shipment was short by 186.340 metric tons and apparently recovered $73,500 on a performance bond Interbras had posted. Interbras in turn served Orient with a demand to arbitrate a claim of $73,500 representing its loss.

It appears from the record that Interbras originally claimed a right to arbitration as the assignee of Frota. Orient contested the arbitration demand by arguing that the claim was not encompassed by Frota's arbitration agreement.[1] Interbras then altered its theory from assignment to agency, claiming that Frota had entered into the original charter agreement as its undisclosed agent. Interbras submitted to the court a telex from its legal department in Brazil to bolster its claim of agency.[2] Judge Knapp agreed that "in light of all the circumstances in the case before us," Frota had entered into the charter agreement as agent for Interbras, and that Interbras was therefore privileged to enforce the agreement's arbitration clause. 509 F.Supp. at 1070.

Judge Knapp recognized that his decision was based only on several affidavits and a single telex. He therefore allowed Orient to submit further papers "in view of the fact that the principal-agent issue has not been litigated by the parties . . . ." Id. While Orient did submit additional papers, it also protested Judge Knapp's failure to conduct a trial. The additional evidence failed to alter Judge Knapp's conclusion. On this appeal, Orient challenges the finding of agency and claims that Judge Knapp should have at least conducted a trial on the issue.

## DISCUSSION

▇ Orient does not dispute the well settled rule that an undisclosed principal may enforce a contract made for its benefit "even though the [obligee] did not know there was an undisclosed principal." *Morris*

1. Orient contended, in opposing the initial demand for arbitration, that Interbras could avail itself of Frota's arbitration clause only with respect to claims which Frota itself could assert against Orient. Under the terms of the exculpatory "side letter," Orient reasoned, Frota could never be liable for the claim in this case. Since Frota could have no occasion to assert a claim to arbitrate in this case, Orient argued that Interbras, as Frota's assignee, could not demand arbitration either.

Interbras then altered its theory from assignment to agency in the lower court proceedings, and stated at argument before us "We are not relying on the question of assignment—we are relying on the fact that Interbras is the undisclosed principal of Frota and as such has the uninhibited right to take any steps under the charter agreement between Orient and Frota."

We therefore consider the assignment theory abandoned and express no views on its merits.

2. The telex, dated July 11, 1980, is signed "Afranio Acioli De Oliveira, Acting Head, Contract Section." It does not indicate the company which employs De Oliveira, however. Nevertheless, the letter from Interbras' counsel which introduced the telex to the district court stated: "inquiry was made by the undersigned of client's legal department based in Rio de Janeiro, Brazil, and the telex . . . which was received from the head of the Contracts Section . . . is informative." The letter demonstrates that De Oliveira is the Acting Head of Interbras' Contract Section and that Interbras submitted to the district court a telex from its own legal department to support its claim of agency.

*v. Chesapeake & O.S.S. Co.*, 125 F. 62, 66 (S.D.N.Y.1903), *aff'd*, 148 F. 11 (2d Cir.), *cert. denied*, 203 U.S. 592, 27 S.Ct. 781, 51 L.Ed. 331 (1906). However, Orient asserts that it has rebutted Interbras' showing of agency sufficiently to require a trial of the issue under 9 U.S.C. § 4 which provides in pertinent part:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . .

■ This Court has repeatedly held that "whether a person is a party to [an] arbitration agreement . . . is included within the statutory issue of 'the making of the arbitration agreement.' " *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 462 F.2d 673, 677 (2d Cir. 1972). *See McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d 519, 524 (2d Cir. 1980). Of course, to warrant a trial under 9 U.S.C. § 4, the issue raised must be "genuine," *Almacenes Fernandez S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945):

> To make a genuine issue entitling the plaintiff to a trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial.

■ We conclude that Orient's evidence challenging the agency claim was sufficient to raise a "genuine" issue of fact under *Golodetz*. The district court therefore erred in refusing to conduct a trial on the issue. The principal document Interbras submitted to the district court to support its contention of agency was a telex from its own legal department. While we make no comment on the telex other than to observe

that it does assert an agency relationship, we acknowledge that Orient's desire to cross-examine its author is well founded in view of Orient's charge that the telex is factually incorrect and self-serving.

In addition, Orient argues that Frota's assignment of its rights to Interbras is inconsistent with an agency relationship. Counsel for Interbras attempted to reconcile this inconsistency, stating at oral argument: "At the time that assignment was requested, apparently [Interbras] felt that in order to arbitrate in its own name it needed [a] document." We think Orient should be accorded a full opportunity to probe what appears to us a confusing subcharter arrangement. Moreover, Judge Knapp made his decision without the benefit of testimony from a Frota representative which might elucidate much of the confusion which confronts us.

Accordingly, we reverse and remand for a trial on the issue of agency.

Reversed and remanded. Each party shall bear its own costs.